Wayson W. S. Wong, Esq.
Law Offices of Wayson Wong
142 Seaton Boulevard, Suite 101
Hagåtña, Guam 96910
Telephone No.: (671) 475-7448
Facsimile No.: (671) 477-4455
Email Address: WaysonWong@aol.com

Attorney for Plaintiff




FILED
DISTRICT COURT OF GUAM
JAN 14 2008
JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| FLORENCIA Q. LEWIS, | CIV. NO. 05-00026 |
| Plaintiff, | (Federal Tort Claims Act) |
| vs. | PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PAYMENT OF SETTLEMENT AMOUNT; DECLARATION OF WAYSON W. S. WONG; EXHIBIT "I"; CERTIFICATE OF SERVICE |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| | No Hearing Requested by Plaintiff |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL PAYMENT OF SETTLEMENT AMOUNT

Plaintiff Florencia Lewis ("Mrs. Lewis"), by her attorney, Wayson W. S. Wong, Esq., replies to the Opposition of the United States to Plaintiff's Motion to Compel Payment of Settlement Amount ("opposing memorandum").

The problem with respect to completing this settlement is the United States' ("Government") counsel failing to understand the facts and apply them properly to the



obligations involved. This Court can readily see that from the Memorandum of Points and Authorities, the opposing memorandum and this reply memorandum relating to Plaintiff's Motion to Compel Payment of Settlement Amount ("plaintiff's motion"). Mrs. Lewis has not requested a hearing on plaintiff's motion because she wants it expeditiously decided; she has waited too long for the $339,900 in settlement proceeds she was promised by the Government. The Government has requested a hearing; but again, the documents filed readily show that problem and the justification for the resolution requested. No hearing is needed.

The underlying facts are as follows. There was a settlement pursuant to the settlement agreement prepared by and signed by both the Government's counsel and then approved and signed by Mrs. Lewis counsel on September 18, 2007. Irrespective of this case, Mrs. Lewis has had TRICARE benefits available to her before she was injured at Tripler in 2002 and such benefits have and will continue. Her entitlement to such benefits arose and continue because of the military service of her deceased Marine husband and her surviving him. *See* all of the TRICARE information presented for plaintiff's motion, including the information presented by the Government. Her entitlement to such benefits are totally independent of anything in this case, including the settlement agreement reached. Initially, the Government's counsel was contending that TRICARE is not part of the United States. After we have shown that he is incorrect and he himself providing information to confirm that TRICARE is part of the United States[1], he now seems to be confusing Mrs. Lewis entitlement to TRICARE benefits as something arising from the settlement agreement in this case; nothing could be further from the

---

[1] *See* the copy of the Declaration of Don M. Thompson, Acting Director, Beneficiary and Provider Services Division, TRICARE Management Activity (TMA), Department of Defense attached as Attachment E to the opposing memorandum.

truth. In any event, we have a settlement agreement that is valid and should be enforced, notwithstanding the Government's counsel's confusion as to what it provides.

In the first paragraph of the opposing memorandum, the Government's counsel set forth the following

> Plaintiff is under a misconception that the United States must also obligate itself for unknown bills that Plaintiff apparently intends to submit at some future date to her medical benefits program, TRICARE. The United States will not (and can not) agree to such an unusual arrangement and has been clear from its first suggestion that it will not. (Attachment A).

<u>Plainly and simply, the settlement agreement does not obligate the United States to do that</u>.

There are only two places in the settlement agreement that touch or concern TRICARE. They are in paragraph 3 of the settlement agreement, which was attached as Exhibit "1" to plaintiff's motion. As indicated in the Memorandum of Points and Authorities, p. 11, paragraph 3 of the settlement agreement reads in part that Mrs. Lewis will indemnify the United States from claims asserted against it incident to or resulting from further litigation or the prosecution of claims by her, her representatives or her assigns against any third party or against the United States, "... except for claims by Tricare for medical expenses it paid for plaintiff for her injuries involved in this case." It also reads in part that "[a]s part of this settlement, the United States waives its right of subrogation."[2] Under such provisions of the settlement agreement, the United States is not obligating itself to do anything with respect to TRICARE with respect to any "... unknown bills that Plaintiff apparently intends to submit at some future date to her medical benefits program, TRICARE." Under the first provision, Mrs. Lewis, not the United States, is

---

[2] Again, this was specifically what the Government's counsel agreed to, and his intent to agree to that was clearly set forth in his 9/1/07 email to Mrs. Lewis counsel, a duplicate of which was attached as Exhibit "7" to plaintiff's motion. He stated specifically that such waiver "...increases the value of the offer of settlement we have made." Mrs. Lewis concurs; but now the Government is trying to renege on that agreement.

the one obligated to indemnify, except she need not indemnify for claims by TRICARE. Under the second provision, if TRICARE is part of the United States, which Mrs. Lewis contends and has shown it is, the United States has waived its right of subrogation for TRICARE's claims. In other words, under the second provision, the United States will not seek reimbursement for the medical expenses it has paid for her under the United States' TRICARE program. **Under the settlement agreement reached**, there is absolutely no requirement that the United States pay or obligate itself to pay any bills presented to it by Mrs. Lewis. For the United States to contend otherwise is wrong and merely a "red herring."

However, as indicated, long before the Tripler doctor seriously injured Mrs. Lewis in August 2002, her deceased Marine husband had earned her the rights, privileges and medical benefits she has had under TRICARE as his widow. Those benefits were there for any medical treatment she needed, whether or not it was negligently caused; and her entitlement to them will continue until she passes away. *See* Mr. Thompson's declaration explaining the entitlements to TRICARE benefits (Attachment E to the opposing memorandum). Mr. Thompson's declaration supports Mrs. Lewis position that she will be entitled to her TRICARE medical benefits irrespective of this case. Mrs. Lewis wants the United States to continue to provide her with the TRICARE benefits to which she has always been entitled to and will continue to ask it to do that as needed; but again, such continuing entitlement to such TRICARE benefits has nothing to do with this case. Surely the Government is not contending that Mrs. Lewis will lose her previously entitled to TRICARE benefits because she reasonably agreed to a substantial compromise of her medical malpractice claim against it. Such contention would be unjustified and unconscionable, especially when unstated in any settlement negotiations and the settlement agreement.

At some time in the future, Mrs. Lewis may ask TRICARE to provide her medical benefits she is entitled to under her TRICARE for Life plan; and she would want it to honor its obligation to pay such benefits. But again, that is totally unrelated to any obligation the Government has to her under the settlement agreement.

Thus, the Government's reason for its refusal to honor the settlement agreement makes no sense. Accordingly, it should be required to honor it.

In the second paragraph of the opposing memorandum, the Government stated that there are only two ways Mrs. Lewis can accept the settlement amount. The first way is by accepting its recent offer of judgment. The second is by accepting its significantly revised settlement agreement. The first fails to provide any waiver of the Government's right of subrogation. The second only partially provides for a waiver of the Government's right of subrogation. The settlement agreement prepared by the Government, signed by its counsel and accepted by Mrs. Lewis already, provides for a total waiver of the Government's right of subrogation, a waiver that the Government's counsel described as a thing that "increases the value of the offer of settlement." Mrs. Lewis already reached a settlement agreement, and the Government is without justification to extort from her a less favorable settlement agreement by refusing to honor the one it had already agreed to.

In the third paragraph on page 2 of the opposing memorandum, under footnote 1, the Government has tried to indicate that it has no responsibility for crippling Mrs. Lewis. Its willingness to settle with her for $339,900 refutes that indication.

In the fourth paragraph of the opposing memorandum, the Government tried to put words into Mrs. Lewis' mouth, words that neither she nor her counsel ever said. We never said that the United States has to agree that she does not have to pay TRICARE for bills submitted to it.

Frankly, we do not know what the Government's counsel is talking about. As indicated in the Memorandum of Points and Authorities, p. 16, Mrs. Lewis has the TRICARE for Life plan, the terms and conditions of which are explained in the handbook for TRICARE for Life mentioned on page 17 and in footnote 5 of that Memorandum of Points and Authorities. Under that plan, for any medical bill she incurs, Medicare is primary and TRICARE may pay any further charges that Medicare does not cover. Under that plan, Mrs. Lewis does not pay anything to TRICARE for Life. If there is a non-covered charge or co-payment responsibility, she usually pays the health care provider such non-covered charge or co-payment. Again, we are unsure what the Government's counsel was writing about when he indicated that she somehow had to pay TRICARE.

In the fifth paragraph, the Government's counsel complained that what was most disconcerting was Mrs. Lewis refusal to provide her TRICARE bills. What is disconcerting to us is the Government's counsel failure to advise this Court of all of the pertinent facts about such bills. Such withheld facts include Mrs. Lewis' previous unsuccessful efforts to obtain her TRICARE bills and the Government already obtaining many of them[3]. *See* Mrs. Lewis' counsel's December 20, 2007 email to the Government's counsel, a copy of which is attached to this reply memorandum as Exhibit "I" and the Declaration of Wayson W. S. Wong attached. The Government could have readily obtained Mrs. Lewis' specific TRICARE plan information since, again, it is part of the United States. As indicated, her membership in the TRICARE for Life plan was already identified on page 16 of her Memorandum of Points and Authorities. The Government's counsel again referred to "Plaintiff's intention not to pay TRICARE" and her plan to "stiff" TRICARE as "unheard of." The only reason it is unheard of is because all of these

---

[3] The Government probably obtained those TRICARE bills because TRICARE is part of the United States, and the Government's counsel has had better access to such bills than Mrs. Lewis.

references by the Government's counsel have been made up by him; we have never set forth any such intention. To the contrary, Mrs. Lewis has always honored each and every obligation she has had to TRICARE and will continue to do that; and she expects TRICARE and the United States to honor their obligations to her.

In the sixth paragraph on page 3 of the opposing memorandum, the Government's counsel contended that we have tried to trick it into some kind of agreement by arguing that TRICARE is part of the United States. First, TRICARE is part of the United States, and there is no trickery involved in arguing the truth. Secondly, and importantly, what is such agreement? Under the first paragraph, it appears to be an agreement under the settlement agreement that the United States is obligated to pay for unknown bills submitted by Mrs. Lewis to TRICARE. As shown, there is no such agreement under the settlement agreement. Under the fourth paragraph, it appears to be an agreement under the settlement agreement that Mrs. Lewis does not have to pay TRICARE for bills that she may submit to it in the future. Under the settlement agreement, there is no such agreement; and as previously explained, Mrs. Lewis has never had to pay TRICARE anything regardless of this case.

Granted, TRICARE is not a facility like Tripler or Naval Hospital Guam, but it is still part of the United States. The military doctors who treat Mrs. Lewis are not facilities, but they still are part of the United States. All are part of such facilities. There is either a TRICARE representative at each facility and/or TRICARE information readily available at each facility. TRICARE is the DOD program that provides substantial administrative and financial operations support for the delivery of medical care at such facilities. The facilities, the staff there and the programs that are serviced and implemented there, including TRICARE, are all an integral part of the DOD's health care delivery system; they are all part of the United States. But TRICARE

being part of the United States is not Mrs. Lewis reason for the United States accepting any "unorthodox proposal." As has been clearly shown, Mrs. Lewis has not made any unorthodox proposal. TRICARE being part of the United States means that under the settlement agreement, the United States has waived its claims for subrogation as to what TRICARE paid for Mrs. Lewis' medical treatment for her left arm and hand injuries, nothing more and nothing less. That is what the Government had agreed to, and such agreement is not unorthodox. As the Government counsel put it, it merely "… increases the value of the offer of settlement …," which is what Mrs. Lewis had relied upon in accepting that settlement offer.

In the seventh paragraph on page 3 of the opposing memorandum, the Government's counsel wrongfully contended that Mrs. Lewis was dishonest in using the settlement agreement signed by him and Mrs. Lewis' counsel as the settlement agreement for this case. There has been nothing dishonest about using the settlement agreement signed by both sides to indicate their approval of the same. Law students are initially taught in the basic contracts course in law school that when you prepare a two party contract, sign it and present it to the other side for review and approval, if the other side accepts it and also signs it, you usually have a valid binding contract. As the preparer, if there were terms and conditions in the contract that you did not agree to, do not send it to the other side, and for goodness sake, do not sign it and send it to the other side.

In that seventh paragraph, the Government's counsel also critically alluded to the settlement agreement "proposal to somehow cover unknown submissions to Plaintiff's TRICARE program" but failed to specify what provision in the settlement agreement contains such proposal. Such failure probably is because, as has been shown, there was no such proposal in the settlement agreement he prepared and signed. It is one thing to argue for a different

construction of a provision in an agreement, but it is another to argue against a provision that was never in the agreement in the first place. The latter is disingenuous.

In that seventh paragraph, the Government's counsel additionally alluded to a TRICARE scheme based on Mrs. Lewis "… seeking an agreement that Plaintiff not have to pay future bills to her TRICARE program." The only thing that perhaps could be construed to relate to that was Mrs. Lewis counsel's request to include the provision "… the United States either will release or pay such claims by TRICARE." Such provision was requested with respect to past medical bills that TRICARE had paid; Mrs. Lewis counsel did not want any requirement for reimbursement by TRICARE to reduce the amount of her settlement.[4] Such provision had nothing to do with future bills. But most importantly, that provision was rejected by the Government's counsel and never included in the settlement agreement. So why is it a problem?

After wrongfully setting forth that dishonesty argument, the Government's counsel conjured up a fraud possibility in the eighth paragraph based on the alleged "unusual agreement." That argument is based on speculation upon speculation, and thus, it is meaningless. First, Mrs. Lewis has not and will not submit any bill to TRICARE for the payment of Dr. Landstrom's services as an expert witness. TRICARE has no coverage for such services. Secondly, the Government's counsel fails to specify what the unusual agreement is in the settlement agreement, and this Court should not have to speculate as to what it is.

Simply stated, there was a valid settlement agreement signed by all of the parties to it. It should be enforced. There has been no trickery and no unusual, unprecedented and improper agreement with respect to TRICARE in the settlement agreement. All of the ones (two or three)

---

[4] Mrs. Lewis' counsel has since learned that TRICARE does not seek such reimbursement from its members, it only seeks reimbursement from third-party tortfeasors who tortiously caused the member to incur medical treatment for the member's injury caused by the tort. *See* the Medical Care Recovery Act.

conjured up by the Government's counsel have been shown not to exist in the settlement agreement. The problems have arisen because initially, the Government's counsel unfortunately did not understand that TRICARE is a part to the United States and then because he has conjured up non existent agreement(s) concerning TRICARE.

It is a shame that elderly widowed and permanently injured Mrs. Lewis has had to fight so hard to have the Government recognize the major injuries its employee caused her and now has had to fight even more to have it simply honor the reasonable settlement agreement she and it agreed to. We ask this Court to correct the latter injustice by ordering the Government to pay her what it promised forthwith, with appropriate interest, and award her reimbursement for her substantial attorney's fees and costs she has incurred because of the Government's wrongful refusal to honor that settlement agreement, in an amount to be determined subsequently. Thank you.

Dated: Hagatna, Guam, January 14, 2008.

                                       */s/ Wayson W. S. Wong*
                                       Wayson W. S. Wong
                                       Attorney for Plaintiff

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| FLORENCIA Q. LEWIS, ) | CIV. NO. 05-00026 |
| ) | |
| Plaintiff, ) | (Federal Tort Claims Act) |
| ) | |
| vs. ) | DECLARATION OF WAYSON W. S. |
| ) | WONG |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## DECLARATION OF WAYSON W. S. WONG

I, Wayson W. S. Wong, declare as follows.

1. I have been the attorney for plaintiff Florencia Q. Lewis ("Mrs. Lewis") in this case since its inception.

2. The copy of the December 20, 2007 email attached to Plaintiff's Reply Memorandum in Support of Plaintiff's Motion to Compel Payment of Settlement Amount is a copy of the email (in blue) I received from the Government's counsel in this case, attorney Mikel Schwab, and my response (in red) to him; it is attached as Exhibit "I".

3. As indicated in that email (fifth paragraph), I explained to attorney Schwab that I had unsuccessfully tried to obtain Mrs. Lewis' TRICARE bills and confirmed to him that he could and did.

4. On December 5, 2007, at my request, attorney Schwab had provided to me copies of what he described as Mrs. Lewis' TRICARE bills he had been able to obtain; those "bills"

included information about treatment and charges by Dr. Jerone Landstrom (1), Guam Memorial Hospital (4) and Dr. Thomas McNorton (1).

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: Hagatna, Guam, January 14, 2008.

_____
Wayson W. S. Wong

# EXHIBIT "I"

```
Subj:    Lewis v. United States
Date:    12/20/2007 12:10:58 PM West Pacific Standard Time
From:    WaysonWong
To:      Mikel.Schwab@usdoj.gov
```

Mikel,

I have been traveling and attending to other cases. You sent me the below email just as I was leaving Guam. I now respond to it (my response is in red).

You know the rest of the story. We were after hours and concentrating on the section you changed regarding secrecy. That was a PDF copy. Then we turned to the section you changed on altering her relationship with her insurance company. Further, the secrecy changes were not accepted by you. We discussed more drafts thereafter.

You sent me your proposed version of the stipulation to confirm our settlement. I wrote my proposed handwritten changes to it and faxed them to you. You accepted some of my changes but not others and signed your second proposed version of it. Although the second proposed version was not everything I wanted to see, because I wanted to move forward, I signed it to confirm our settlement agreement. However, I was asking Marie to make some minor changes as to the receiving bank's address. To me, we had a signed agreement.

I am slow to allege fraud. You will not give me the specific bills and have given me questions to pass on to people with more experience. There have been past incidents where attorneys have tried to have things charged off that were paid by them as part of their client's case. Your refusal to be specific sets off red flags with persons of more experience in this area.

I still do not understand your insistence for specific bills. To me, they are irrelevant. The issue is whether TRICARE is part of the U.S. If it is, there is no claim it will assert in this case. If it is not, then we can argue further about whether you agreed, on behalf of the U.S., to take care of its claims in this case. But I continue to believe that it is part of the U.S. I have told you that I believe TRICARE paid up to $20,000 in medical expenses for Mrs. Lewis, but I have been unable to obtain its invoices for such payments. You could, probably because it is part of the U.S. Since you can, please try to obtain the others for yourself. But again, what is the relevancy of those bills to this issue? According to you, the United States is or is not responsible for them, whether they are for $1,000 or $20,000.

I have no authority over your client's bills except for those she would be responsible for in the event of a judgment or settlement, for services provided by the military doctors at USNH and Tripler. No trick of language, no "but you said", no 'someone else told me..' or construction of which program is federal or not, can expand my limited authority. I have said that to you every time we have discussed the issue but you continue to hope for some way around that.

My faded hope has been that you recognize the factual information I gave you from the U.S. Navy Hosptital Guam and the official DOD web sites about TRICARE being a program run by the DOD for the uniform services. The DOD runs the USNH and Tripler, you waived their claims; the DOD runs TRICARE, you certainly can waive its claims. They are all part of the DOD! There is no trickery or fancy language, just facts that you have never given me any other facts to support your position except "I believe," "someone told me," etc. Those are not good enough to come even close to rebut the facts I have provided to you.

As we both know, the Court will not accept a PDF copy and I did not give you an original because we did not agree on a completed draft. If you now attempt to take the PDF draft from that evening, and claim to the court that it was an agreement, you would be deceiving the court. We have never agreed on language to excuse your client's Tri Care responsibilities with regard to private providers.

I believe that the Court can and will accept a document that was signed by you and signed by me as the agreement of the parties, whether it is in PDF format or otherwise. The format does not make an agreement, it is you agreeing by your signature and me agreeing by mine. In that agreement, we agreed that Mrs. Lewis did not have to indemnify the United States from any claims by TRICARE and that the United States waives its right of subrogation. In my proposed draft to you, I had asked that the sentence "As part of this settlement, the United States either will release or be responsible to pay such claims by Tricare." But rather than accepting my sentence, you instead inserted the sentence, "As part of this settlement, the United States waives its right of subrogation;" and then signed your second proposed stipulation. As indicated, I preferred my sentence, but since TRICARE was part of the U.S., it did not matter that much to me. I signed your second proposed stipulation to confirm our settlement agreement.

I have asked and asked and asked for you to provide the bills that concern you and you have not done so.

See my above remarks.

M

It is too bad that we have been unable to communicate effectively with each other on resolving this issue.

Nevertheless, best wishes for a Happy Holiday Season, Wayson Wong

---

See AOL's top rated recipes and easy ways to stay in shape for winter.

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| FLORENCIA Q. LEWIS, | ) CIV. NO. 05-00026 |
|---|---|
| Plaintiff, | ) (Federal Tort Claims Act) |
| vs. | ) CERTIFICATE OF SERVICE |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, a copy of the foregoing documents was duly served by personal delivery, to the following at his last known address.

    Mikel W. Schwab, Esq.
    Assistant U.S. Attorney
    Sirena Plaza, Suite 500
    108 Hernan Cortes Ave.
    Hagatna, Guam 96910

    Attorney for Defendant

Dated: Hagatna, Guam, January 14, 2008.

                                            _____
                                            Wayson W. S. Wong
                                            Attorney for Plaintiff